IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JTH TAX LLC,

    **Plaintiff,**

v.                                                                                                         Civil Action No. 3:20cv176

DM3 VENTURES, INC., *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants DM3 Ventures, Inc. d/b/a Whitewood Tax Solutions ("Whitewood"), Liberty Tax Solutions, Inc. ("Liberty Tax Solutions"), and Darin Branch's (collectively, the "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] (the "Motion to Dismiss"), (ECF No. 17), and Plaintiff JTH Tax LLC d/b/a Liberty Tax Service's ("Liberty Tax") Motion for Preliminary Injunction (the "Preliminary Injunction"), (ECF No. 19). Liberty Tax responded to the Motion to Dismiss, (ECF No. 21), and Defendants replied, (ECF No. 24). Defendants responded to the Preliminary Injunction, (ECF No. 25), and Liberty Tax replied, (ECF No. 27).

These matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[2]

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Liberty Tax identifies its basis for jurisdiction as federal trademark law, 15 U.S.C. §§ 1051–1141. (*See* Compl. ¶ 9.)

and 1367(a).[3] For the reasons that follow, the Court will grant Defendants' Motion to Dismiss for failure to state a claim under Rule 12(b)(6), dismiss Liberty Tax's claims without prejudice, and deny as moot the Preliminary Injunction.

### I. Factual and Procedural Background

Liberty Tax brings this trademark infringement and related-claims action against three defendants. Liberty Tax's claims center around Defendants' creation and ownership of the domain name "libertycanhelp.com" (the "Domain"). (Compl. ¶ 20, ECF No. 1.)

#### A.   Factual Allegations[4]

Liberty Tax operates as "a franchisor of Liberty Tax Service income tax preparation service centers." (*Id.* ¶ 13.) Liberty Tax owns several federally registered trademarks, service marks, and logos, as well as the "Liberty Tax Service System [that] sells income tax preparation and filing services and products to the public under its marks." (*Id.* ¶ 14.) Liberty Tax's registered trademarks include: (1) "LIBERTY TAX" design and word mark; (2) "LIBERTY TAX SERVICE" design and word mark; and, (3) "LIBERTY INCOME TAX" word mark (collectively, the "LIBERTY TAX Marks"). (*Id.*) Liberty Tax presents that due to its use of the LIBERTY TAX Marks, consumers associate "Liberty Tax" with its "uniform goods and services" provided only by "persons following Liberty Tax's approved methods and procedures."

---

[3] The Court exercises supplemental jurisdiction over Liberty Tax's state law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). The Complaint alleges trademark infringement pursuant to Virginia Code § 59.1-92.12 and common law unfair competition.

[4] For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

2

(*Id.* ¶ 16.) Liberty Tax states that it "has used the LIBERTY TAX Marks . . . to grow from five (5) offices in 1998, to more than 4,000 today." (*Id.* ¶ 17.) Liberty Tax claims to now be "one of the largest tax preparation franchises in the United States." (*Id.*)

According to Liberty Tax, Whitewood provides tax resolution services, "helping individuals or entities . . . with delinquent tax debt." (*Id.* ¶ 18.) In 2014, Liberty Tax and Whitewood formed a partnership in which "Whitewood would provide its tax resolution services to Liberty Tax's franchisees." (*Id.* ¶ 19.) At an unspecified time, the partnership ended. (*Id.*) Sometime before, during, or thereafter, Whitewood created the Domain, which "automatically redirects" visitors from www.libertycanhelp.com to a different Whitewood-owned site: www.yourtaxhelpteam.com. (*Id.* ¶¶ 20, 29.) Liberty Tax alleges that this secondary site advertises Whitewood's tax services. (*Id.*) In September 2019, Whitewood "sought a federal trademark" for the Domain, and according to Liberty Tax, claimed a first-use date of the mark as December 1, 2014. (*Id.* ¶ 21.) Liberty alleges that "Whitewood has used marks that are confusingly similar to the LIBERTY TAX Marks to advertise and sell Whitewood's services." (*Id.* ¶ 29.) Liberty Tax further avers that Branch, Whitewood's CEO and founder, "falsely advertises a relationship between the two" on his personal LinkedIn page despite the end of their partnership. (*Id.* ¶ 23; *see also* Compl. Ex. 1 "Darin Branch LinkedIn" 1, ECF No. 1-2.)

On October 15, 2019, Liberty Tax sent Whitewood a cease and desist letter, contending that "Whitewood has registered and is using the domain name, www.libertycanhelp.com, without Liberty's authorization." (*Id.* ¶ 25; *see also* Compl. Ex. 2 "Cease and Desist Notice," ECF No. 1-3.) On October 21, 2019, Whitewood responded, acknowledging control over the Domain but "disclaiming any potential consumer confusion." (*Id.* ¶ 26; *see also* Compl. Ex. 3 "Resp. Cease and Desist," ECF No. 1-4.) Liberty Tax alleges that Defendants have "acted knowingly

3

and willfully, with . . . intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of Liberty Tax." (*Id.* ¶ 33.)

Liberty Tax brings five counts against Defendants, including:

(1) Trademark Infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a) (Count I);

(2) Cybersquatting, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d) (Count II);

(3) False Designation of Origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count III);

(4) Virginia Common Law Unfair Competition (Count IV); and,

(5) Virginia Trademark Infringement, in violation of Virginia Code § 59.1-92.12 (Count V).

(*See id.* 5–10.)

Liberty Tax seeks preliminary and permanent injunctions to "prevent[] Whitewood from continued infringement of . . . [the] LIBERTY TAX Marks." (*Id.* 10.) Liberty Tax also requests an accounting of profits and damages, an award for damages suffered, an order forfeiting the Domain, and interests and costs. (*Id.* 10–11.)

### B.  Procedural Background

On March 12, 2020, Liberty Tax filed its five-count Complaint in this Court. (ECF No. 1.) On May 12, 2020, Defendants filed their Motion to Dismiss. (ECF No. 17.) On May 22, 2020, Liberty Tax filed its Preliminary Injunction, requesting the Court enjoin Defendants from using the LIBERTY TAX Marks or "any other marks that are confusingly similar to them." (Mot. Prelim. Inj. 1, ECF No. 19.) For the reasons that follow, the Court will grant the Motion to Dismiss in its entirety, dismissing Liberty Tax's five claims without prejudice. The Court will deny as moot the Preliminary Injunction because Liberty Tax fails to allege facts that sufficiently

show customer confusion, meaning that Liberty Tax fails to make a clear showing that it will succeed on its claims.

## II. Standards of Review

### A. Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a Complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a Complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the Complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly

give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### B. Preliminary Injunction

"[A] preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) ("*Perry II*") (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Such remedy is "never awarded as of right." *Winter*, 555 U.S. at 24. "[G]ranting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way." *Hughes Network Sys. v. InterDigital Comm'cns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). Therefore, preliminary injunctions are "to be granted only sparingly." *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 590–91 (E.D. Va. 2008) (quoting *Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524 (4th Cir. 2003)).

In order to be eligible for a preliminary injunction, the party seeking such relief must demonstrate each of the following factors: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief; and, (4) the public interest favors granting an injunction. *Winter*, 555 U.S. at 20; *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010). "The required irreparable harm must be neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quotations and citations omitted).

Liberty Tax, as the party seeking a preliminary injunction, bears the burden of establishing that each factor supports granting the injunction. *Real Truth*, 575 F.3d at 346. Each factor must be demonstrated by a "clear showing." *Winter*, 555 U. S. at 22. The failure to show any one of the relevant factors mandates denial of the preliminary injunction. *Real Truth*, 575 F.3d at 346.

### III. Analysis

Defendants seek relief pursuant to Rule 12(b)(6) on several grounds. Addressing these claims, the Court first concludes that because Liberty Tax does not allege, except for legal conclusions, that Defendants' use of the Domain creates a likelihood of confusion, the Court will dismiss the claims in Counts I and III–V for trademark infringement and false designation of origin under the Lanham Act, and Virginia trademark infringement and common law unfair competition.

Second, because the Court concludes that Liberty Tax does not allege sufficient plausible facts to support claims for infringement under federal or state law, the Court will dismiss the claims as asserted against Branch, as CEO of Whitewood in his individual capacity.[5]

---

[5] Liberty Tax does not specify which Counts run against Branch. Reading the Complaint liberally, the Court will presume all five counts include an individual-capacity claim.

However, paragraph 23 of the Complaint is the sole paragraph naming Branch individually. Liberty Tax attaches as Exhibit A the printout of a LinkedIn profile in which Branch purports to "support Liberty Tax Service Franchises," thereby creating confusion.

"[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (reiterating that the Court may also properly "consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits"). Branch challenges Exhibit A in at least two ways: (1) he indicates that Whitewood continues to support some Liberty Tax franchises alongside other organizations; and, (2) he says he "removed that phrase from his LinkedIn page *before* Liberty Tax moved for [its] injunction." (Mem. Opp'n Mot. Prelim. Inj. 9, ECF No. 25.) The Court will disregard this document for purposes of the Motion to Dismiss. As indicated below, Liberty Tax's Motion for Preliminary Injunction falters on other grounds.

7

Third, because Liberty Tax does not allege sufficient plausible facts of Defendants' bad faith, instead alleging only the receipt of and response to the Cease and Desist Notice, the Court will dismiss the Anti-Cybersquatting Consumer Protection Act ("ACPA") claim.

Finally, because Liberty Tax does not clearly show that it would likely succeed on the merits, the Court denies as moot the Preliminary Injunction.

### A. The Court Will Dismiss Liberty Tax's Lanham Act Trademark Infringement and False Designation of Origin Claims, and Virginia Unfair Competition and Trademark Infringement Claims Because Liberty Tax Fails to Allege Likelihood of Confusion

Because trademark infringement and false designation of origin under the Lanham Act share the same customer confusion element with Virginia trademark infringement and common law unfair competition, the Court will address these four Counts together. Even taking the factual allegations in the Complaint as true, Liberty Tax fails to allege sufficient plausible facts to establish that Defendants' use of the Domain creates a likelihood of confusion. Therefore, the Court will dismiss Counts I, III–V.

#### 1. Legal Standard

Trademark infringement and false designation of origin claims under the Lanham Act share the same elements with a claim for Virginia common law unfair competition. Under settled law within the United States Court of Appeals for the Fourth Circuit, "[t]he required elements for a Section 43(a) claim of unfair competition and false designation of origin are essentially the same as the elements for a claim of infringement of a registered trademark under the Lanham Act." *Nationstar Mortg., LLC v. Ahmad*, 155 F. Supp. 3d 585, 592 (E.D. Va. 2015) (citing *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012)). Additionally, under Virginia law, "a claim for unfair competition is essentially identical to the elements of the same claim under the Lanham Act." *Id.* (citing *Lamparello v.*

8

*Falwell*, 420 F.3d 309, 312 n.1 (4th Cir. 2005) ("[A Virginia common law] unfair competition claim rises or falls with . . . federal claims of infringement and false designation of origin.")); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved."). Courts typically do "not analyze [the] state-law claim separately." *See Lamparello*, 420 F.3d at 312 n.1.

Thus, in order to survive a motion to dismiss on Counts I, III–V, Liberty Tax must allege facts supporting the following five elements:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and, (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for Ethical Treatment of Animals v. Doughney, (PETA)*, 263 F.3d 359, 364 (4th Cir. 2001) (quoting 15 U.S.C. §§ 1114, 1125(a)) (citing *Lone Star*, 43 F.3d at 930).

Under this test, "[a] likelihood of confusion exists between two marks if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014) (internal quotations and citations omitted). Generally, a court must "determine whether a likelihood of confusion exists by examining the allegedly infringing use *in the context in which it is seen by the ordinary consumer*." *Lamparello*, 420 F.3d at 316 (internal quotations

9

and citations omitted). The Fourth Circuit has identified nine factors to determine if a "likelihood of confusion" exists.[6] *Swatch AG*, 739 F.3d at 158.

Under Virginia trademark infringement,[7] the "likelihood of confusion" element "is essentially the same as trademark infringement under the Virginia Trademark and Service Mark Act." *Am. Auto. Assoc. v. AAA Auto Glass*, No. 1:14cv01072, 2015 WL 3545927, at *3 (E.D. Va. June 3, 2015); *see also* VA. CODE ANN. § 59.1-92.12 (requiring proof that the infringing use of marks is "likely to cause consumer confusion, mistake, or deception as to the source or origin of any goods or services").

The Fourth Circuit has stated that "[w]hen dealing with domain names, . . . a court must evaluate an allegedly infringing domain name in conjunction with the content of the

---

[6] The nine factors include:

(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and[,] (9) the sophistication of the consuming public.

*See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014). "These nine factors serve as a guide rather than a rigid formula for infringement; they are not all of equal importance and not all factors are relevant in every case." *Id.* (internal quotations and citations omitted).

[7] Virginia Code § 59.1-92.12 provides, in pertinent part, that trademark infringement occurs when an infringer

uses in a manner likely to cause a consumer confusion, mistake, or deception as to the source or origin of any goods or services, without the consent of the owner of a registered mark, any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of such goods or services . . . .

VA. CODE ANN. § 59.1-92.12.

10

website identified by the domain name." *Passport Health, LLC v. Avance Health System, Inc.*, 823 F. App'x 141, 150 (4th Cir. 2020) (quoting *Lamparello*, 420 F.3d at 316) (alterations omitted). Therefore, "a court should not consider how closely a *fragment* of a given use duplicates the trademark, but must instead consider *whether the use in its entirety creates a likelihood of confusion*." *Id.*

While "likelihood of confusion is a factual issue dependent on the circumstances of each case and is ill-suited on a motion to dismiss, . . . a *conclusory and formulaic* recitation of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss." *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Assoc.*, 2 F. Supp. 3d 758, 768 (4th Cir. 2014) (internal quotations and citations omitted) (emphasis added).

### 2. Because Liberty Tax Fails to Allege Sufficient Plausible Facts as to Consumer Confusion, the Court Will Grant the Motion and Dismiss Counts I, III–V

Because Liberty Tax does not sufficiently allege plausible facts to show that Defendants "used the mark in a manner likely to confuse consumers," the Court must grant the Motion to Dismiss as to Counts I, III–V: Liberty Tax's claims for trademark infringement and false designation of origin under the Lanham act, and Virginia trademark infringement and common law unfair competition. *PETA*, 263 F.3d at 364.

Liberty Tax does not ground its claim of confusion over services provided. Liberty Tax acknowledges that it provides tax preparation service, (Compl. ¶ 13), while Whitewood operates as a "tax resolution service" (*id.* ¶ 18). Liberty Tax bases its claims on Whitewood's use of the Domain "www.libertycanhelp.com," which redirects visitors to another Whitewood site. (*Id.* ¶ 20.) Liberty Tax avers that such use infringes on its LIBERTY Tax Marks but does not show

11

how Defendants' actual "use in its entirety creates a likelihood of confusion." *See Passport Health*, 823 F. App'x at 150. For instance, Liberty does not provide any context about the redirected website that would cause confusion to an ordinary consumer. *See id.* Indeed, Liberty Tax does not provide any plausible facts to show how the Domain would reach any of its customers.

Without evidence as to the website to which the Domain links, Liberty Tax appears to advance under the "initial interest confusion" doctrine, which the Fourth Circuit declined to adopt in *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005). "That doctrine holds a competitor liable under trademark law if the competitor 'lur[es] potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated.'" *Passport Health*, 823 F. App'x at 150 (quoting *Lamparello*, 420 F.3d at 316). In *Lamparello*, the Fourth Circuit rejected this argument and stated that a different analysis applies, "requiring courts to determine whether a likelihood of confusion exists by examin[ing] the allegedly infringing use *in the context in which it is seen by the ordinary consumer*." *Lamparello*, 420 F.3d at 316. "When dealing with domain names, this means a court must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name." *Id.* Therefore, Liberty Tax cannot, under well-established law in this circuit, present only a domain name without consideration of "the content of the website identified by the domain name." *See id.*

Liberty Tax does not allege sufficient facts to show how Whitewood's actual use of the Domain would cause confusion as seen by the ordinary customer. Although Liberty Tax asks this Court to find that "libertytaxcanhelp.com" sufficiently likens to the LIBERTY TAX Marks to create a likelihood of confusion, Liberty Tax alleges only that Whitewood owns and sought a

federal trademark for the Domain. But, even read liberally, Liberty Tax does not present facts alleging "the similarity of advertising used by the markholders" nor how or even if Whitewood advertises or presents the Domain to any consumers. *See Swatch AG*, 739 F.3d at 158.

Turning to the Fourth Circuit's likelihood of confusion factors the Court must consider for trademark infringement and false designation of origin under the Lanham Act, and Virginia trademark infringement and common law unfair competition, the Complaint does not allege "the similarity of the two marks to consumers" in that it does not present how consumers, without any advertising or other referral, would come across the Domain. *Id.* Instead, Liberty Tax concedes that it primarily engages in a different tax service than Defendants, differentiating the "similarity of the goods or services that the marks identify." *Id.*; (Compl. ¶¶ 13, 18 (alleging Liberty Tax provides an "income tax preparation service" while Defendants provide "delinquent tax debt" services).) Regarding Defendants' intent, Liberty Tax simply alleges that "Whitewood has acted . . . with the intent to deceive consumers." (*Id.* ¶ 33.) Liberty Tax tells the Court that the Parties had previously entered into a partnership, (*see id.* ¶ 19), but does not, for instance, allege any creation date for the Domain. Without more, the Court cannot discern whether Defendants' created the Domain before, during, or subsequent to the partnership, which may prove material to "intent." *See Swatch AG*, 739 F.3d at 158. Liberty Tax also does not present that the sophistication of the "consuming public" favors a finding of a likelihood of confusion in order to show alleged infringement under trademark infringement and false designation of origin under the Lanham Act, and under the Virginia trademark infringement and common law unfair competition. *Id.*

The Court also notes that the current record describing the Whitewood-owned site, "www.yourtaxhelpteam.com," even read favorably to Liberty Tax, favors granting the Motion to

13

Dismiss when applied to the law. Liberty Tax admits that the Domain redirects consumers to this site "advertising [Defendants'] tax services." (Compl. ¶ 20.) Because the Court "must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name," a site that explicitly identifies the service provider (and not, for instance, Liberty Tax) tends to negate a finding of likelihood of confusion. *Passport Health*, 823 F. App'x at 150 (holding that website dispelled any confusion by placing defendant's individual marks on the top of each page and not referencing plaintiff's business or services).

Because Liberty Tax fails to allege sufficient facts to support a claim of trademark infringement and false designation of origin under the Lanham Act, or a claim of Virginia trademark infringement and common law unfair competition, the Court will grant the Motion to Dismiss as to those claims. *See Potomac Conf. Corp.*, 2 F. Supp. 3d at 768 (granting a motion to dismiss on a complaint "devoid of any facts supporting" likelihood of confusion). While the Court recognizes that likelihood of confusion "is ill-suited [to decision] on a motion to dismiss," Liberty Tax does not sufficiently allege any plausible facts to show that the Defendants used the LIBERTY TAX Marks in a manner likely to confuse consumers. *Id.* (finding insufficient a "conclusory and formulaic recitation" of the "likelihood of confusion" elements at the motion to dismiss stage).

### C. The Court Will Dismiss the Claim Against Darin Branch in His Individual Capacity

As stated above, Liberty Tax does not sufficiently allege plausible facts to support claims for trademark infringement and false designation of origin under the Lanham Act, or Virginia trademark infringement or common law unfair competition. For the same reasons, Liberty Tax

does not sufficiently plead facts showing that Darin Branch engaged in tortious conduct leading to an alleged infringement, meaning the Court will dismiss Counts I–V alleged against Branch.[8]

### 1. Legal Standard

"As a general rule, corporate officers are not held personally liable for infringement by their corporation when they are acting within the scope of their duties." *See, e.g., Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 864 (N.D. Ill. 2009). In trademark infringement cases, however, "an officer of a corporation can be held personally liable for his own conduct in infringing on another's trademark." *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 266 (4th Cir. 2019); *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation."). The basis of the "substantive claim of liability" must be sufficiently pleaded in the complaint. *See Life Techs. Corp.*, 931 F.3d at 266.

### 2. Because Liberty Tax Fails to Sufficiently Allege Infringement, The Court Will Dismiss the Claims as Against Branch

Liberty Tax does not sufficiently allege that Branch, as a corporate official, committed "tortious conduct" for the "benefit of [Defendant] corporations." *See Polo Fashions, Inc.*, 816 F.2d at 149. Liberty Tax alleges only that Branch maintains a statement on his LinkedIn that reads, "We are changing the tax industry for the better by supporting Liberty Tax Service Franchisees." (Compl. ¶ 23.) Liberty Tax argues that because the partnership between the two entities has ended, such a statement "falsely advertises a relationship between the two." (*Id.*)

---

[8] As earlier explained, because Liberty Tax does not specify which Counts run against Branch, the Court will presume, under a liberal reading of the Complaint, that all five counts include an individual-capacity claim.

15

Importantly, Liberty Tax does not allege how such a statement might lead to customer confusion. Factually, even reading the Complaint favorably to Liberty Tax, the statement about "supporting" Liberty Tax makes plain that the entities provide different services to different types of consumers. *See id.* Further, Liberty Tax does not allege that it exists as the only "Liberty Tax Service Franchisee[]" or that Defendants do not do business with any other such franchisee. *See id.* For these reasons and the reasons stated above as to the lack of sufficient plausible facts to show likelihood of confusion, the Court grants the Motion to Dismiss as to Counts I–V as alleged against Branch in his individual capacity.

### D. The Court Will Dismiss the ACPA Claim in Count II

For the reasons stated above, Liberty Tax does not plead sufficient plausible facts to show Defendants acted with a bad-faith intent. Therefore, the Court will grant without prejudice the Motion to Dismiss as to Count II.

#### 1. Legal Standard

To properly plead a cause of action for cybersquatting under the Anticybersquatting Consumer Protection Act (the "ACPA"),[9] Liberty Tax must plead facts to support: (1) Liberty Tax owns a protected mark; (2) Defendant Domain Names are identical or confusingly similar to the LIBERTY TAX Marks; and, (3) the registrants used Defendant Domain Names with the bad-

---

[9] The Fourth Circuit has noted that "[t]he paradigmatic harm that the ACPA was enacted to eradicate is the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark." *See Lamparello*, 420 F.3d at 318 (internal quotations and citations omitted). "The [ACPA] was also intended to stop the registration of multiple marks with the hope of selling them to the highest bidder, distinctive marks to defraud consumers or to engage in counterfeiting activities, and well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site . . . that [typically] derive[s] advertising revenue based on the number of visits, or hits, the site receives." *Id.* (internal quotations and citations omitted). The ACPA was not intended to prevent "noncommercial uses of a mark," and thus they "are beyond the scope" of the ACPA. *Id.* (internal quotations and citations omitted).

16

faith intent to profit from the LIBERTY TAX Marks. *Doughney*, 263 F.3d at 367 (citing 15 U.S.C. § 1125(d)(1)(A)). The ACPA lists nine factors that a court may consider in determining bad faith. *See* 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)–(IX). The nine factors are probative and need not be exhaustively considered. *See Lamparello*, 420 F.3d at 319. The ACPA provides a "safe harbor" provision "stating that bad faith intent 'shall not be found in any case in which the court determines that the person believed and had reasonable ground to believe that the use of the domain name was fair use or otherwise lawful.'" *Doughney*, 263 F.3d at 369 (citing 15 U.S.C. § 1125(d)(1)(B)(ii)).

### 2. Because Liberty Tax Does Not Allege Sufficient Plausible Facts to Show that Defendants Acted with Bad Faith, the Court Will Dismiss the ACPA Claim

For the reasons previously stated, Liberty Tax does not allege sufficient plausible facts related to Defendants' intent except to conclude Defendants acted "knowingly and willfully, with . . . the intent to deceive consumers." As the Court earlier explained, Liberty Tax fails to allege facts that would support bad-faith intent, such as the Domain's likelihood to create confusion in the context in which it is seen by the ordinary consumer or its date of creation. Instead, Liberty Tax admits that Defendants "disclaimed any potential consumer confusion," supporting that Defendants may have "had reasonable ground to believe that the use of the domain name was fair use or otherwise lawful." *Doughney*, 263 F.3d at 369. Without more, the Court cannot discern how the Defendants, in using and seeking registration on the Domain, acted with bad faith.

### E. Preliminary Injunction

Because a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing [of entitlement] to such relief" and the party seeking relief must

demonstrate "the likelihood of success on the merits," the Court will deny the Preliminary Injunction. *Perry II*, 471 F. App'x at 223; *Winter*, 555 U.S. at 20. Again, Liberty Tax does not plausibly allege sufficient facts to show that a likelihood of consumer confusion exists. Because trademark infringement and false designation of origin under the Lanham Act share the same likelihood of confusion element with Virginia trademark infringement and common law unfair competition, Liberty Tax cannot demonstrate a "likelihood of success on the merits." *Winter*, 555 U.S. at 20.

As to its claims under the ACPA, Liberty Tax again does not demonstrate sufficient plausible facts to support the showing of bad-faith intent required by the statute. *See Doughney*, 263 F.3d at 367. The facts alleged in the Complaint, even read in a light most favorable to Liberty Tax, suggest that Defendants fall within the ACPA safe harbor provision such that they seemingly "had reasonable ground to believe that the use of the domain name was fair use or otherwise lawful." *Doughney*, 263 F.3d at 369. For these reasons and because a preliminary injunction functions as "an extraordinary remedy," *Perry II*, 471 F. App'x at 223, the Court will deny the Preliminary Injunction.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss, (ECF No. 17), and deny the Motion for Preliminary Injunction, (ECF No. 19). The Court will dismiss the Complaint, (ECF No. 1), without prejudice, providing Liberty Tax with leave to amend.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 11/6/2020
Richmond, Virginia